WILLOW, INC., Appellant v. YANKTON CO., Respondent

(237 N.W.2d 660)

(File No. 11627. Opinion filed December 19, 1975)

M. T. Woods, of Woods, Fuller, Shultz & Smith, Sioux Falls, for appellant.

Richard D. Hagerty, Larry F. Hosmer, Yankton, for respondent.

DOYLE, Justice.

This case constitutes an appeal by Willow, Inc. (Willow) from an assessment of its real property for the year 1973.

Willow's principal contention is that the income approach alone should be employed in determining the true and full value of its property; evidence of a previous sale of the property in

question and evidence of previous sales of arguably comparable properties should be rejected as inappropriate for the court and assessor to consider in the face of evidence as to income.

The taxpayer appealed to the County Board of Equalization which denied relief. The taxpayer thereupon appealed to the circuit court which, after a trial de novo, also denied relief. Willow now comes before this court, and we affirm the trial court on all issues.

## I. The Facts.

Willow was organized for the apparent purpose of purchasing and operating the Kochi Motel in Yankton, South Dakota. The corporation accomplished this objective in two steps. In 1970 the corporation purchased two motels, the swimming pool and the ingress and egress to the operation, giving a contract for deed for $575,000. In 1971 the corporation signed a contract for deed for $850,000 for the remainder of the property. This property consisted of meeting rooms, business offices, a lounge and a bowling alley. The aggregate price for the two sections appears to total $1,425,000. For some reason, however, the trial court found and the appeal has been brought on the assumption that the selling price was $1,300,000. This discrepancy is not harmful to the taxpayer, and for the purpose of this opinion the $1,300,000 figure will be employed. Willow's property was assessed at $745,000 true and full value in 1973. Its taxable value was computed at 60% of its full and true value or $452,370.

## II. Full and True Value.

■ The first controversy in this case, as in *Yadco v. Yankton County,* 1975, 89 S.D. 651, 237 N.W.2d 665, also decided today, is whether the trial court's determination of true and full value is to be sustained. As noted in *Yadco,* the determination of true and full value commonly involves consideration of various factors, including " 'replacement cost less proper deductions * * * income from the property,' *Sheraton-Midcontinent Corp. v. County of Pennington,* [1959, 77 S.D. 554, 95 N.W.2d 892]; ' "Evidence of actual sales of other lands," ' when such sales are made by willing buyers to willing sellers, *Tidball v. Miller,* [1948,

72 S.D. 243, 32 N.W.2d 683]; and previous sales of the particular property in question, *Plaza Hotel Assoc. v. Wellington Assoc., Inc.*, 1973, 73 Misc.2d 6, 340 N.Y.S.2d 796." *Yadco v. Yankton County*, supra.

█ The evidence favorable to the verdict of the trial court may be summarized as follows. First, the precise property in question was sold in 1970 and 1971 for $1,300,000, well above the ultimate finding of true and full value of $745,000. Other courts have occasionally spoken of the very great weight which can be assigned to a contemporaneous sale. See, e. g., *Plaza Hotel Assoc. v. Wellington Assoc., Inc.*, 1973, 73 Misc.2d 6, 340 N.Y.S.2d 796. Of course, such weight should not be given to a sale in all situations, and the time lapse between the sale and the assessment here prevents us from ascribing overwhelming importance to the sale in this case. It is, however, entitled to at least some weight in this situation.

█ A consideration which might be said to be pertinent here is that a sale of property under conditions approximating a forced sale is never to be considered as a criterion of value. *Tidball v. Miller*, 1948, 72 S.D. 243, 32 N.W.2d 683; SDCL 10-6-33. As noted above, two transactions were involved in the transfer of the property at issue to its present owners. The first part of the property was purchased for $575,000 under apparently normal market conditions. There was testimony that the second part of the property was purchased under duress and for an excessive price—$850,000. According to the testimony, the owner of the second piece of property did not maintain high standards in operating his property (the meeting rooms, lounge, business area and bowling alley) and this in turn adversely affected Willow's motel business. It was contended at trial that Willow was therefore forced to purchase the second piece of property.

The trial court apparently rejected the duress theory, noting in Finding of Fact IV that "the transaction was between a willing purchaser and a willing seller under open market conditions."

The taxpayer has not attempted to refute this finding and it therefore stands as the law of the case.

█ It might be argued that the taxpayer does launch a general attack on Finding of Fact IV in his Assignment of Error I. That Assignment states:

"1. The Court erred in making its Finding of Fact IV because all the evidence shows that the sale price mentioned was, as appellant's president said, 'way too much'. (T 26 L 23 and the testimony of the witnesses Heuer T 5-30, DesJarlais T 30-48 and Hanson T 48-72, ESP. 72 L 18-22 proved this to be correct) * *."

█ The foregoing is clearly insufficient to raise the issue in that it fails to "plainly point out" the alleged error. SDCL 15-29-6. A quotation that the sale was for "way too much" does not direct the court's attention to the possibility that the sale was not one between a willing buyer and a willing seller. Furthermore, the assignment does not "state the particulars in which the evidence is claimed to be insufficient" to sustain the finding of fact. SDCL 15-29-6. A general reference to 70 pages of testimony is, of course, inadequate to accomplish this.

█ However, even if this court were to find that the assignment was sufficient or that the matter comes under the exception in *Western Surety Co. v. Schroeder,* 1922, 45 S.D. 115, 186 N.W. 562, we note that the taxpayer has not mentioned the willing buyer-willing seller controversy at all in his brief. Thus, although the taxpayer regarded the matter as important enough to pursue at the trial court level, we can only conclude that he has abandoned it on appeal. See *Boe v. Healy,* 1969, 84 S.D. 155, 168 N.W.2d 710.

We are therefore required to find that the $1,300,000 sale was made under the willing buyer-willing seller test; it thus stands as evidence that the true and full value of the property in question was not below the $745,000 value set by the assessor. As indicated above, the evidence is not as strong as it might have been had the sale occurred at a more recent date.

Further evidence supporting the county's case was brought forth by way of testimony by Mr. Miller, a professional appraiser. Mr. Miller testified that in his opinion there had been sales of

similar motels in the Yankton area which involved smaller motels constructed of wood. These motels had sold at prices ranging from $14.99 to $17.36 per square foot. The Kochi, a larger and newer motel constructed of brick, sold for $22.20 per square foot to the taxpayer. According to Mr. Miller, the prices are comparable when the differing construction materials are considered.

Finally, Mr. Miller testified that he had considered three methods together—the cost approach, comparable sales approach and income approach—to determine that the assessor's valuation was "reasonable." He did not, however, explain the details of his use of the cost approach or income approach. This severely diminishes the importance of the expert's conclusion on this point. Cf., *In Re Jepsen's Appeal,* 1956, 76 S.D. 421, 80 N.W.2d 76.

In contrast to the county's evidence, the taxpayer's evidence centered on the income approach. The taxpayer's expert witness testified that the proper valuation of the property employing that approach was $572,000. The expert witness thoroughly explained his use of the income method, thereby lending far more credence to the use of that method than can be given to the county's use of the method.

The taxpayer's expert witness testified that he did not use the comparative sales approach because in his opinion, there were no sales of comparable motels in the relevant time in the Yankton area. Nor did the expert witness consider the 1970-71 sale of the Kochi property itself. Finally, the taxpayer's expert witness refused to employ the cost approach because "there is so much functional obsolescence" in the Kochi property.

The issue presented is whether the income approach alone should be employed in determining the full and true value of motel property even when there is evidence of a sale of the property in question within two to three years and evidence of sales of smaller motels constructed of wood instead of brick.

■ The applicable principle is well stated at Annot., 96 A.L.R.2d 681:

"the courts are in complete agreement that income or earnings is neither the controlling element nor the only element to be considered in determining the valuation of realty for tax purposes."

The reason for the rule is that income in a particular year or projected income may be grossly misleading as to the true worth of a piece of property. Such income may reflect temporary boom or depression or it may be indicative only of very good or very poor management. *See Rowland v. City of Tyler*, 1928, Tex.-Comm.App., 5 S.W.2d 756; *People v. Tax Commission of City of New York*, 1962, 17 A.D.2d 225, 233 N.Y.S.2d 501; *Petition of Ernst*, 1968, 58 Misc.2d 504, 295 N.Y.S.2d 712. *Yadco v. Yankton County*, supra, also supports this reasoning.

 We agree with the trial court that the taxpayer's reasons for failing to rely on any other method of valuation are not persuasive; indeed, valid evidence of other methods was introduced at trial. There was evidence of a sale of the property within two to three years. We recognize, as we have said above, that a sale of property must be "recent" to have probative worth, and a two to three year old sale is not in itself conclusive of value. However, we find that it should not be entirely excluded from consideration. Furthermore, there was evidence of comparable sales in the Yankton area. We acknowledged that the motels were not identical to the Kochi. Again, however, the sales were of properties close enough in style and function to give them probative value, especially when the differences in the motels were explained and there was testimony as to the resulting difference in value. Hence, the taxpayer's effort to remove himself from the uniformly applied rule that income is not to be considered the sole measure of value must fail, and, because the taxpayer's case rests solely on the income approach, it must be found wanting.

 Furthermore, an examination of the evidence made independently of the rule of law expressed above reveals that the trial court's determination of the assessed valuation of the subject property was not "clearly erroneous." *In Re Estate of Hobelsberger*, 1970, 85 S.D. 282, 181 N.W.2d 455; *Yadco v. Yankton County*, supra. Evidence supporting the trial court's determina-

tion is contained in testimony as to the previous sale of the Kochi and of sales of similar motels in the area. Thus, in this case, it would be possible to sustain the trial court on that ground alone.

We conclude that the trial court's determination of true and full value of the Kochi property must be sustained.

*III. Sales Ratio.*

The taxpayer in this case, as in *Yadco v. Yankton County,* supra, urges an argument based on the use of sales ratios. We reject this argument on the same basis as we announced today in Yadco.

Affirmed.

All the Justices concur.